IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 5, 2007

## IN RE J.C.J. AND J.E.J.

Appeal from the Juvenile Court for Jefferson County
No. 7320    A. Benjamin Strand, Jr., Judge

No. E2006-01756-COA-R3-PT  - FILED APRIL 25, 2007

The trial court terminated the parental rights of E.S.J. ("Father") with respect to his minor children, J.C.J. (DOB: April 30, 2003) and J.E.J. (DOB: May 4, 2002) (collectively "the children"), upon finding, by clear and convincing evidence, that grounds for termination existed and that termination was in the best interest of the children.  The court awarded the maternal grandparents temporary custody of the children.  Father appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

J. Michael Kerr, Jefferson City, Tennessee, for the appellant, E.S.J.

Lucy D. Hooper, Newport, Tennessee, for the appellees, D.J.T., D.W.T., and M.C.T.

W. Keith Repass, Dandridge, Tennessee, Guardian Ad Litem for J.C.J. and J.E.J.

**OPINION**

I.

Father and M.C.T. ("Mother") are the biological parents of the children.  Father and Mother, who are currently in their mid-20s, met when they were in middle school and began a relationship thereafter.  Mother moved in with Father after becoming pregnant with J.E.J.

Father and Mother experienced many legal and personal problems during the course of their relationship.  Father has a history of drug use and has pleaded guilty to a number of drug crimes, ranging from simple possession to the sale and delivery of illegal drugs.  Mother also used drugs during the relationship and was aware that Father was selling drugs.  Father also has pleaded guilty

to domestic assault of Mother. Mother testified that, on at least one occasion, Father abused her in the presence of J.E.J. Father kept a loaded 9mm gun in the house he shared with Mother and the children.

On October 27, 2004, Father pleaded guilty in federal court to conspiracy to distribute and possession with the intent to distribute at least 500 grams of methamphetamine and at least 100 kilograms of marijuana and conspiracy to commit money laundering. The federal court sentenced Father to a prison term of 151 months. Father is currently serving this sentence at a federal penitentiary in McCreary, Kentucky.

Following Father's incarceration in October 2004, Mother moved herself and the children into her parents' residence. D.J.T. and D.W.T. (collectively "the maternal grandparents") have been the children's primary caregivers since that time. The maternal grandparents have been married for 30 years. D.J.T., the maternal grandmother, is 47 years old and is employed by a pharmaceutical company in Knoxville. D.W.T., the maternal grandfather, is unemployed and draws social security disability benefits. The maternal grandmother testified that her husband is in good health "other than . . . trouble with his back, where he can't walk long distances." Mother eventually moved out of her parents' residence to reside with a new boyfriend. She left the children in her parents' custody. The maternal grandparents have received no financial support from Father for the children since his incarceration.

In January 2005, the maternal grandparents and Mother filed a petition to terminate the parental rights of Father. Mother joined her parents in the petition "for the purpose of providing her consent to the adoption of [the] children by [the maternal grandparents] and for the purpose of terminating her parental rights to [the children]." The trial court subsequently appointed an attorney for Father and a guardian ad litem for the children. The guardian ad litem filed an answer to the petition in which he agreed that grounds existed for the termination of Father's parental rights and that termination and the anticipated adoption by the maternal grandparents were in the children's best interest. Father did not answer the petition.

In December 2005, the trial court conducted a hearing in which Father participated telephonically. During this hearing, Father agreed to voluntarily surrender his parental rights and consent to the maternal grandparents' adoption of the children. However, prior to the entry of a final order, Father withdrew his surrender and consent, stating that he had not been fully informed of his legal options. The court allowed Father to withdraw his surrender/consent and set a hearing on the petition.

On March 28, 2006, the trial court heard testimony in the case. The court's final order sets forth the following pertinent facts and conclusions:

> A. [Father] is confined to a correctional facility by Order of the United States District Court, Eastern District of Tennessee and he pled guilty to conspiracy to distribute and possession with intent to

distribute at least 500 grams of methamphetamine and at least 100 kilograms of marijuana and conspiracy to commit money laundering. His sentence is 151 months;

B. [J.C.J.] (born 04-30-03) and [J.E.J.] (born 05-04-02), the minor children, were under the age of eight at the time the 151 month sentence was entered by the United States District Court against [Father];

C. [Father] has a criminal history which includes but is not limited to the following:

> 1. Jefferson County, Tennessee General Sessions Court Judgment entered April 11, 2003 wherein [Father] pled guilty to domestic assault of Co-petitioner, [Mother], and simple possession;

> 2. Jefferson County, Tennessee Circuit Court Judgment entered November 23, 2004 wherein [Father] was found guilty for the sale and delivery of methamphetamine; and

> 3. Jefferson County, Tennessee General Sessions Court Judgment entered April 6, 2001 wherein [Father] was found guilty of possession of Schedule IV drugs;

D. [Father] admitted to selling drugs including methamphetamine, marijuana, and cocaine for a period of 3 to 4 years;

E. [Father] cannot provide a home for the minor children due to his incarceration;

F. [Father] has failed to maintain regular contact with the children while incarcerated with only one Christmas card and perhaps one birthday card being sent to the children;

G. [Father] physically abused [Mother] in their home prior to his incarceration and the physical abuse occurred while the minor child, [J.E.J.] was in the home or at a neighbor's home next door;

H. [Father]'s pre-incarceration displayed a wanton disregard for the welfare of the children and his actions that resulted in his incarceration pose a risk of substantial harm to the children;

I. [Father] had a loaded gun in the home around the children;

J. [D.J.T.] and husband, [D.W.T.] have provided continuous custody and financial support for the minor children since October 2004 and they have provided the children's food, clothing, nurturing, and shelter since that time;

K. [D.J.T.] is gainfully employed with excellent health insurance benefits available to the children;

L. [D.J.T.] and [D.W.T.] have been married for 30 years and are the maternal grandparents of the children;

M. The incarceration of [Father] and his years of drug dealing and criminal conduct makes him unable to provide for the children in a safe and stable manner;

N. [D.J.T.] and [D.W.T.] are the sole means of financial support for the minor children; and

O. [Father] has failed to provide financial support for the children since his incarceration, even though he earns wages in prison as a cook and even though he testified he has access to money through his aunts and girlfriend.

The trial court terminated Father's parental rights pursuant to T.C.A. § 36-1-113(g)(6) (Supp. 2006), based on the fact that Father was confined to a correctional facility for a sentence exceeding 10 years and that the children were less than eight years old at the time of his sentencing. The court also found, by clear and convincing evidence, that termination of Father's parental rights was in the children's best interest. After terminating Father's parental rights, and taking into account Mother's stated desire to voluntarily surrender her parental rights, the trial court awarded the maternal grandparents temporary custody of the children. The court also ordered a home study of the maternal grandparents' residence to determine if it was a "proper home" for the children. From this judgment, Father appeals.

## II.

The law is well-established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley*

***v. Illinois***, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). This right, however, is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the pertinent statute. ***Santosky v. Kramer***, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In Tennessee, a party that seeks to terminate another party's parental rights must first prove the existence of a statutory ground for termination. T.C.A. § 36-1-113(c)(1). The party seeking termination must then prove that termination of parental rights is in the child's best interest. ***Id.*** at (c)(2). Both of these elements must be established by clear and convincing evidence. ***Id.*** at (c)(1); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

III.

In the case of ***In re F.R.R., III***, 193 S.W.3d 528 (Tenn. 2006), the Supreme Court recently stated the standard of review in a termination of parental rights case:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539 , 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

***In re F.R.R., III***, 193 S.W.3d at 530.

IV.

Father argues that the trial court erred in finding (1) that there is clear and convincing evidence establishing a ground for the termination of his parental rights; and (2) that there is clear and convincing evidence establishing that termination is in the children's best interest. He also argues that the court erred in awarding the maternal grandparents temporary custody of the children. We will address each of these matters in turn.

V.

Father first takes issue with the trial court's finding that clear and convincing evidence establishes a ground for the termination of his parental rights.

-5-

The statutory grounds for terminating parental rights are found at T.C.A. § 36-1-113(g). The trial court relied upon subsection (g)(6)[1] as its ground for termination in this case. That provision states that parental rights can be terminated upon a finding that a parent has been confined in a correctional facility as the result of a criminal act under a sentence of 10 or more years, and that the child in question was under the age of eight at the time the parent was sentenced. On October 27, 2004, Father received a sentence of 151 months, *i.e.*, 12 years and 7 months. The children were born in May 2002 and April 2003 respectively; thus, each child was under the age of eight when Father was sentenced in October 2004.

Father concedes that the current set of facts fall within the ambit of T.C.A. § 36-1-113(g)(6). He argues, however, that the trial court erred in finding that these facts alone warrant termination. He stresses the fact that section 36-1-113(g)(6) states that termination proceedings "*may* be based upon" this ground. (Emphasis added). So, according to him, the trial court was not required to find, and should not have found, that the instant set of facts warrants termination. He goes on to state that the trial court "abused its discretion in finding that this ground alone was enough to justify the drastic step of termination of his parental rights." We find no merit in Father's argument.

It is well-settled that "the existence of any one of the statutory bases will support a termination of parental rights." *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000) (abrogated on other grounds); *see In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) ("The trial court is required to find only one statutory ground for termination of parental rights."). The provisions of subsection (g)(6) are straightforward and are clearly implicated by the facts of this case. Father received a sentence of more than 10 years, and the children were under the age of eight at the time of the sentencing. We therefore find and hold that the trial court was correct in finding that clear and convincing evidence supports terminating Father's parental rights under T.C.A. § 36-1-113(g)(6).

VI.

Father next contends that the trial court erred in finding, by clear and convincing evidence, that terminating his parental rights is in the children's best interest.

_____

[1]T.C.A. § 36-1-113(g)(6) provides as follows:

> Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
>
>       \*   \*   \*
>
> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

The factors that a trial court must consider when determining whether the termination of parental rights is in the best interest of a child are set forth in T.C.A. § 36-1-113(i) (Supp. 2006), which provides, in pertinent part, as follows:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
>
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
>
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
>
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

This list is "not exhaustive," and there is no requirement that every factor must appear "before a court can find that termination is in a child's best interest." ***Dep't. of Children's Servs. v. T.S.W.***, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. M.S., filed May 10, 2002).

The children in the instant case were both under the age of three when Father was incarcerated. Since his incarceration, Father has had little contact with the children. *See* T.C.A. § 36-1-113(i)(3). He has sent the children a Christmas card and maybe one birthday card. The maternal grandmother testified that Father has "had a couple of phone calls" with the children but that the children do not know who he is. This evidence supports a finding that a meaningful relationship between Father and the children has not been established. *See **id.*** at (i)(4).

Father has pleaded guilty to physically abusing Mother. *See **id.*** at (i)(6). Mother testified that, on at least one occasion, she was physically abused by Father in the presence of J.E.J. The evidence also supports a finding that Father is unable to care for the children in a safe and stable manner. *See **id*** at (i)(7). Father has an extensive history of drug use and drug dealing. Mother testified that drugs and drug users were frequently in their house. Furthermore, Father kept a loaded 9mm gun in their house.

Father earns money as a cook in prison. He testified that he could, if necessary, get his current girlfriend or his aunts to send money for the children's care and support. He has, however, failed to provide any financial assistance to Mother or the maternal grandparents. *See **id.*** at (i)(9).

We conclude that the evidence does not preponderate against the trial court's finding, made by clear and convincing evidence, that the termination of the parental rights of Father is in the best interest of the children.

VII.

Father also argues that the trial court erred in awarding the maternal grandparents temporary custody of the children and "that the children would be better off with his aunts . . . or, in the alternative, in a foster care home."

The factors a trial court must consider in determining the custody of children, to the extent that they are pertinent in a given case, are set forth in T.C.A. § 36-6-106(a) (2005).[2] The best interest of the child is the paramount consideration. T.C.A. § 36-6-106(a); *see Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988).

To support his argument on this issue, Father claims that the maternal grandfather drinks "all the time." The grandfather did not testify at trial; however, the maternal grandmother denied this allegation by Father and stated that her husband drinks alcoholic beverages once in a while and usually when the children are not at their home. Mother corroborated the grandmother's testimony on this issue. Father admitted that he had no first-hand knowledge of the grandfather's drinking habits but stated that Mother had told him of her father's alcoholism. Mother denied that she told

---

[2]T.C.A. § 36-6-106(a) provides the following:

> In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> (7) (A) The reasonable preference of the child if twelve (12) years of age or older;
>
>    (B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Father this. The trial court ordered a home study of the maternal grandparents' residence in response to this testimony and in response to the maternal grandmother's testimony that the children slept in her and her husband's bedroom.

Father further asserts that the trial court should have awarded his two aunts temporary custody of the children. We disagree. There is evidence that, after Father was incarcerated in 2004, Father's aunts sometimes helped the maternal grandparents care for the children by taking the children on weekends. The maternal grandmother testified that the relationship with Father's aunts was severed because the aunts were becoming "possessive" of the children and were not returning the children in a timely manner. There is no suggestion in the record that Father's aunts have ever desired or sought custody of the children.

The maternal grandparents have nurtured a bond with the children and wish to adopt them. *See* T.C.A. § 36-6-106(a)(1). Since October 2004, they have provided food, clothing, medical care, and all other necessary care for the children. *See id.* at (a)(2). The maternal grandmother has a steady income and can provide excellent healthcare coverage for the children. *See id.* The maternal grandfather does not work and is able to care for the children during the day. *See id.* The maternal grandparents have been married for 30 years, and the evidence is that they have provided a safe and stable home for the children. *See id.* at (a)(3), (4).

After evaluating the evidence before us, we do not find that the evidence preponderates against the trial court's award of temporary custody of the children to the maternal grandparents.

VIII.

The judgment of the trial court is affirmed and this matter is remanded to the trial court for the enforcement of its judgment and collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed against the appellant, E.S.J.

_____
CHARLES D. SUSANO, JR., JUDGE

-10-