IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2010

## IN RE: ALEKSANDREE M.M. AND MARIE J.M.[1]

**Appeal from the Chancery Court for Marshall County**
**No. 14866     J. B. Cox, Chancellor**

---

**No. M2010-01084-COA-R3-PT - Filed September 27, 2010**

---

Mother of four children appeals the termination of her parental rights to two of those children on the ground that she failed to protect them from severe child abuse. Finding the evidence of record to clearly and convincingly support the ground for termination and that termination was in the children's best interest, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

Jheri Beth Rich, Lewisburg, Tennessee, for the appellant, Holly M.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lindsey O. Appiah, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural History**

The Tennessee Department of Children's Services ("DCS") initiated a proceeding on September 29, 2008, in the Chancery Court for Marshal County to terminate the parental rights of Holly M. ("Mother") to her three children. The Marshall County Juvenile Court had previously determined that the children were dependent and neglected and granted temporary custody to DCS. The termination petition also named Scott C., father of the two oldest children, and Paul M., father of the youngest child, as respondents; it sought termination of

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

all parental rights on the ground of severe child abuse pursuant to Tenn. Code Ann. § 36-1-113(g)(4). The petition alleged that Paul M. had engaged in sexual activities with D.C. (Scott C. and Mother's oldest child) and alleged that Scott C. and Mother knowingly failed to protect D.C. from the abuse.[2]

The termination petition was amended on December 23, 2009 to add Paul M.'s second child with Mother (Mother's fourth child), born March 4, 2009, to the proceeding. The amended petition added as a ground against Paul M. that he had been sentenced to a greater than ten year prison sentence as a result of his conviction for rape of a child and that the two younger children were under the age of eight at the time of his sentencing. The amended petition also noted the dismissal of the petition as against Scott C.[3] Following a trial held on January 14 and March 8, 2010, the court entered an order terminating Mother's parental rights to her two youngest children. Mother appeals, raising the following issues:

> 1. Did the Trial Court err in determining that D.C.S. proved by clear and convincing evidence that the Respondent failed to protect her minor children.
> 2. Did the Trial Court err in determining that D.C.S. proved by clear and convincing evidence that it is in the best interest of the minor children that the Respondent's parental rights be terminated.

## II. STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Terminating a person's parental rights "has the legal effect of reducing the parent to the role of a complete stranger." *In re W.B., IV.*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *6 (Tenn. Ct. App. Apr. 29, 2005). Pursuant to Tenn.

---

[2] On March 12, 2009, Niki K., the maternal grandmother of the children, sought to intervene in the case, requesting that the children be placed with her in the event the termination petition was granted. At a hearing held on January 13, 2010, the motion to intervene was denied.

[3] Although the record in this case does not include the record of the dependent and neglect proceedings pending in Marshall County Juvenile Court, the record does contain a motion to dismiss filed by Scott C. which recites that custody of the two eldest children (Scott C.'s children) was awarded to Scott C. on June 9, 2009 by the Juvenile Court; an agreed order was entered dismissing the termination petition as respects Scott C., and the termination order at issue in this case addresses only the children of Mother and Paul M.

Code Ann. § 36-1-113(l)(1), "[a]n order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian."

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## III. DISCUSSION

### A. Statutory Ground for Termination

The court terminated Mother's parental rights on the ground set forth at Tenn. Code Ann. § 36-1-113(g)(4)[4] and made the following findings of fact in the order of termination:

---

[4] Tenn Code Ann. §36-1-113(g)(4) provides:

The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of

(continued...)

1. [Mother] is the mother of DC . . .; B.C.; AMM . . .; and MJM. . . . AMM and MJM are half sisters to DC.

* * *

3. Paul M. is the father of AMM and MJM.

4. Paul M. was convicted in the Marshall County Circuit Court for the rape of DC. [Mother] was also living in the home of Paul M. at the time these acts were committed. DC, BC and AMM were also living there. Paul M. was the stepfather to DC.

5. Paul M. is currently incarcerated with the T.D.O.C. He has been convicted after a jury trial in Marshall County Circuit Court. The judgments are exhibits, as is the trial transcript. Nevertheless, [Mother] is not convinced of his guilt. This is troubling to this Honorable Court.

6. The Court is convinced that had these children remained in the home with Paul M. and [Mother], there wold have been more victims.

7. [Mother] allowed Paul M. and DC to be alone and unsupervised on numerous occasions.

8. [Mother] is 37 years of age. She states that she was sexually abused as a child. Since she was in her 20s, she has carried a diagnosis of bipolar. Now, only since 2009, [Mother] has been taking medicine. She was not taking medicine for her condition, during the period when Paul M. was having sex with DC.

9. On the date of this trial, [Mother] has a lack of memory for the hellish period. She says that she is now on her medications. She states that her memory is spotty. The Court hopes that [Mother] is better now. The Court finds her testimony as to what she remembers and what she does not remember to be convenient and not credible.

---

[4](...continued)
such child, or any other child residing temporarily or permanently in the home of such parent or guardian.

Tenn Code Ann. § 37-1-102(b)(23) defines "severe child abuse" in part pertinent to this appeal as:
(A) The knowing exposure of the child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death . . . ;
* * *
(C) The commission of any act towards the child prohibited by §§ 39-13-502 – 39-13-504, 39-13-522, 39-15-302, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child.

10.  Witnesses placed pornography in the home during the time period in question.

Mother does not challenge the evidentiary support of any of the findings, all of which are supported by clear and convincing evidence.[5]  Mother contends, however, that the evidence is not clear and convincing that she failed to protect the children and asserts that she was not aware that Paul M. was sexually abusing her daughter.  While Mother is correct that there is no direct evidence that she participated in the abuse of her child or witnessed the incidences of abuse, the record is replete with evidence that her conduct violated Tenn. Code Ann. § 36-1-113(g)(4), as that statute has been interpreted and applied.

"Parents who have not themselves severely abused their own child may still be found to have committed severe child abuse if they knowingly exposed the child to, or knowingly failed to protect the child from, conduct constituting severe child abuse."  *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122, at *6 (Tenn. Ct. App. July 13, 2004) (citing Tenn. Code Ann. § 37-1-102(b)(21)(A)–(C)).  "A parent's failure to protect a child will also be considered 'knowing' if the parent had been presented with sufficient facts from which he or she could have and should have recognized that severe child abuse had occurred or that it was highly probable that severe child abuse would occur."  *Id.* at *7.

In addition to testimony of D.C., the record in this case includes the testimony of several of the adults who lived with Mother and Paul M. and pursued a "polyamory" lifestyle.[6]  D.C. testified that the first incident of abuse occurred on her ninth birthday, when

_____

[5]  We have reviewed the transcript of the Chancery Court proceeding as well as that of the criminal trial of Paul M.  The evidence is clear and convincing that Paul M. was guilty of multiple violations of Tenn. Code Ann. § 39-13-522.  Because mother does not challenge the factual support for the court's findings and, in light of the lurid nature of much of the proof, it is not necessary to recite specific evidence constituting "severe child abuse" as defined in Tenn Code Ann. § 37-1-102.

[6]  Mother's psychosexual and parenting assessment defined the lifestyle of Mother and Paul M. thusly:

Relevant family history reported indicates that [Paul M., Mother's] present husband, moved into the household with Mr. and Mrs. [Scott C.], [D.C.], and [B.C.] [Mother and Scott C.'s second child].  In 2001 Ms. [N.A.] [a witness at Paul M.'s criminal trial] moved in and later met her present husband, [L.A.], who subsequently moved into the household.  Household members practiced a lifestyle of 'polyamory.'  Polyamory is strictly defined as 'many loves.'  While there are variations in the practice of this lifestyle, it is polygamist and each adult member of the household is a partner of other adult members in the household.  While the practice may be sexual or nonsexual, the practice in this household was sexual in nature.  Reports indicated [Mother] has referred to polyamory as a 'religion.'  The children are

(continued...)

Mother allowed Paul M. to take her out alone, purportedly to celebrate her birthday, and that other incidences of abuse took place in a field adjoining the trailer in which they lived or in a vacant house on the property.[7] One of the adult participants in the lifestyle testified that Paul M. asked Mother for permission to "court" D.C. and to offer D.C. a ring in hopes of eventually getting her to be one of his three wives.[8] Another testified that Paul M. made "very lewd" comments about young girls in Mother's presence; that, on one occasion as they passed a high school car wash while driving to the store, Mother pointed out to Paul M. some girls that he might be interested in; and that there were pornographic images on the computer. Mother herself testified that she pointed out "young women" for Paul M.; that there was pornography in the house with which at least one of the children came into contact; that she had a profile on a bondage, discipline, and submission and masochism website in which she recorded herself as the "owned slave" of Paul M. and indicated that one of her favorite activities was "bottoming," or taking orders, from men.

There is clear and convincing proof in this record of relevant facts and circumstances from which to conclude that Mother knowingly failed to protect her child from conduct constituting severe child abuse within the meaning of Tenn. Code Ann. § 37-1-102(b)(23)(A)-(C). "Persons act 'knowingly' when they have specific reason to know the relevant facts and circumstances but deliberately ignore them." *In Re R.C.P.*, 2004 WL 1567122 at *7. Mother's participation in the polyamory lifestyle and her master/slave relationship with Paul M. no doubt colored her perspective of the sexually charged, abusive and dangerous environment in which the children were being raised, the reality of which resulted in Paul M.'s abuse of the child. Mother's conduct constituted willful ignorance of the facts that were there for her to see.

Mother contends that, since Paul M. is in jail and upon her assurance that he would never be involved in the children's lives, there is no proof that the children would be "subjected to further abuse or neglect" as contemplated by Tenn. Code Ann. § 36-1-113(g)(3). This is without merit. Tenn. Code Ann. § 36-1-113(g)(4), the statute upon which this case is based, does not impose a requirement that the court find that the child or children will be "subjected to further abuse or neglect." In any event, we reject Mother's contention

---

[6](...continued)
reportedly aware of this lifestyle.

[7] The proof was that the parties resided on an approximately 50 acre tract of land in rural Marshall County on which a trailer with five bedrooms and an older farmhouse were located.

[8] Other proof was that Paul M. and Mother had a "Master/Slave" relationship; that he wanted to found a church and be its head; that he was going to have three wives, one of whom was Mother and one of whom would be D.C.

that, merely because Paul M. is incarcerated and Mother has promised not to expose the children to him, grounds for termination have not been shown. As is clear from the proof recounted above, each of the children were exposed to an environment, based in substantial part on Mother's lifestyle choices, that put them at risk of abuse and from which Mother did not provide them protection. It is Mother's conduct and choices, as much as Paul M.'s actions, that violate the statute. The court's finding that grounds for termination as set forth in Tenn. Code Ann. § 36-1-113(g)(4) were proven is affirmed.

## B. Best Interest

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is in the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn Code Ann. § 36-1-113(i) for the courts to consider in determining the child's best interest.

In making the determination that termination of Mother's parental rights was in the best interest of the children, the trial court noted as follows:

> 12. The court has considered all of the best interest factors, which are listed in T.C.A. § 36-1-113(i). AMM has undergone a change for the better since she came into foster care. She is doing well academically and socially. Both children are in the same foster home. The foster parent wishes to adopt them. The foster mother will encourage AMM and MJM to visit their sisters DC and BC.
> 13. It would not be safe for these children to be returned to [Mother].
> 14. The mental state of [Mother] would be extremely detrimental to the children if they were ever to be placed back with [Mother]. By her own admission, [Mother] has low self-esteem. She testified at the Termination of Parental Rights trial that she is taking her bipolar medication now after over 15 years off of same.

Again, Mother does not challenge the evidentiary support for these findings;[9] rather, she cites recent changes in her lifestyle in support of her contention that termination of her rights is not in the children's best interest. We disagree.

Significantly, Mother testified at the termination hearing, held eight months after the criminal trial of Paul M., that "I still do not believe that my daughter was raped"; that she still

---

[9] Our review of the record confirms that each is supported by clear and convincing evidence.

talked with Paul M. "frequently"; and that she intended to stay married to him. This is evidence that answers negatively the inquiry at § 36-1-113(i)(1) of whether the parent "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent. . . ." Mother's refusal or inability to acknowledge that Paul M. is a pedophile convicted of sexual abuse of one of her children[10] troubled the trial court and is clear and convincing proof that it would not be safe to return the children to Mother.

Moreover, the testimony of Dr. Vaughn, the pyschologist who performed the psychosexual and parenting assessment of Mother, included identification of some of the complexities throughout Mother's life, all of which bore significantly on her then current ability to parent as well as contributed to what Dr. Vaughn characterized as a "dysfunctional" relationship with D.C.[11] Some of these factors included a history of sexual abuse by her brother during her early childhood; alcoholism, drug addiction and depression on the paternal side of her family; self-abusive behavior; past psychiatric treatment; and diagnoses of bipolar disorder and post-traumatic stress syndrome. Dr. Vaughn's testimony supported the finding that Mother's mental state would be extremely detrimental to the children.

## IV. Conclusion

For the foregoing reasons, the judgment terminating Mother's parental rights is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE

---

[10] The psychosexual and parenting assessment also noted that Mother didn't accept that sexual abuse had occurred.

[11] Inasmuch as Dr. Vaughn had not interviewed the other children he was not able to characterize Mother's relationships with them.