IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
Heard at Nashville
June 4, 2003 Session

## In the Matter of D.L.B., A Minor

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Shelby County**
**No. CH-01-0200-2     Kenny W. Armstrong, Special Chancellor**

_____

### No. W2001-02245-SC-R11-CV - Filed October 20, 2003

_____

This appeal involves an action to terminate parental rights filed by the prospective adoptive parents of a child. The child's father asserts that the chancery court erred in terminating his parental rights on the basis that he abandoned his child for the four-month period set forth in Tennessee Code Annotated section 36-1-102(1)(A)(i). To compute the four-month period, the chancery court used the date on which the Court Appointed Special Advocate ("CASA") filed a petition in juvenile court to terminate the father's parental rights. CASA's petition was later dismissed. The Court of Appeals affirmed the chancery court's termination of parental rights under Tennessee Code Annotated section 36-1-102(1)(A)(i) and found an additional ground for abandonment as defined by Tennessee Code Annotated section 36-1-102(1)(A)(iii). Tennessee Code Annotated section 36-1-102(1)(A)(iii) specifies that parental rights may be terminated if the father "willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child." We granted permission to appeal. We hold that the commencement of the four-month period of abandonment under Tennessee Code Annotated section 36-1-102(1)(A)(i) is properly computed from the date on which the petition to terminate parental rights was filed in chancery court, not from the filing date of the earlier juvenile court petition. We further hold that the Court of Appeals erred in terminating the father's parental rights based upon Tennessee Code Annotated section 36-1-102(1)(A)(iii). Accordingly, we reverse the Court of Appeals and remand this case to the trial court.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded to Trial Court

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Barbaralette G. Davis, Webb A. Brewer, and Nancy Percer Kessler, Memphis, Tennessee, for the Appellant-Respondent, David Moore.

Larry E. Parrish, Memphis, Tennessee, for the Appellees-Petitioners, Denise Nickleson and Donald Joe Nickleson.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Dianne Stamey Dycus, Deputy Attorney General, for the Appellee-Respondent, Tennessee Department of Children's Services.

**OPINION**

I. Factual and Procedural Background

The appellant, David Moore ("Mr. Moore"), and Georgia Smith Bady ("Mrs. Bady") are the biological parents of a girl, D.L.B., who was born prematurely at the Regional Medical Center in Memphis, Tennessee, on August 31, 1998. Mrs. Bady was married to Jessie Bady at the time of the child's conception and birth but had been living from time to time with Mr. Moore. During her pregnancy, Mrs. Bady stayed with Mr. Moore a few days each month. During those visits Mr. Moore sometimes provided Mrs. Bady with $10 or $20 for food or clothing. Approximately six weeks into her pregnancy, Mrs. Bady told Mr. Moore that she thought he was the child's father. Because Mrs. Bady used prostitution as a means of supporting her addiction to crack cocaine, Mr. Moore was uncertain if Mrs. Bady's belief was correct. Mr. Moore encouraged Mrs. Bady to seek prenatal care, but she declined to do so.

Mr. Moore never registered as a putative father. See Tenn. Code Ann. § 36-2-318 (2001) (providing that the Tennessee Department of Children's Services ("DCS") shall maintain a putative father registry containing the names of persons who have filed written notice of an intent to claim paternity of a child prior to or within thirty days after such child's birth). No father was named on D.L.B.'s birth certificate. However, Mr. Moore was present at the hospital when D.L.B. was born. Mr. Moore also visited D.L.B. in the hospital's Intensive Care Unit on September 4, 1998; September 11, 1998; September 24, 1998; and October 9, 1998, and telephoned the hospital on September 8, 1998.

Mrs. Bady admitted using crack cocaine during her pregnancy with D.L.B. On October 16, 1998, a Children's Services Referral Form was completed by a member of the hospital staff. The form included statements that Mrs. Bady was using drugs, that she failed to follow a drug treatment program, and that she had no family support, no income, and no stable home. Mr. Moore was listed as the putative father on this form, and his address was provided.

On October 20, 1998, DCS filed a petition in the Juvenile Court of Shelby County alleging that D.L.B. was a dependent and neglected child due to Mrs. Bady's history of drug abuse and her

failure to maintain a stable home.[1]  The juvenile court entered a protective custody order recommending that D.L.B. be placed in the custody of DCS.  On October 29, 1998, D.L.B. was discharged to the custody of DCS.  She was immediately placed in the foster home of Donald Joe Nickleson and his wife, Denise Nickleson, the appellees.  This placement was made through the AGAPE Agency, which has a contract with DCS for the placement of children in DCS custody into foster homes.  D.L.B. has remained in the Nicklesons' care since her release from the hospital.

About two weeks after his last visit with D.L.B., Mr. Moore returned to the hospital.  He was told that D.L.B. was gone.  When he asked one of the nurses about her location, he was told that "they" came and got her.  He was not told who "they" were or where D.L.B. was taken.

Mr. Moore testified that he spoke to a DCS caseworker in November of 1998 and the caseworker refused to give him any information about D.L.B. until he legitimated the child.  In December of 1998 and in November of 1999, Mr. Moore  attempted to establish paternity of D.L.B. in the juvenile court.  However, no petition to establish parentage was filed on either of these dates.  An employee of the Shelby County Juvenile Court testified that it was the juvenile court's policy not to use its resources to file actions in cases in which biological fathers seek to establish paternity of children born during a marriage.  In December of 1999, Mr. Moore was contacted by an attorney regarding the establishment of parentage for the purposes of support.  The attorney's office told Mr. Moore that a DNA test would be scheduled.

In May of 2000, CASA filed a petition in the Juvenile Court of Shelby County seeking to terminate the parental rights of Mrs. Bady, her husband, and any unknown fathers.  In July of 2000, the juvenile court held a hearing on CASA's petition to terminate parental rights.  Mr. Moore was present at this hearing, but Mr. and Mrs. Bady failed to appear.  The juvenile court terminated the parental rights of Mr. and Mrs. Bady, and their parental rights are not at issue in this appeal.  CASA requested leave to amend the petition to include Mr. Moore as a respondent.  The juvenile court granted this request and continued the hearing to allow a paternity test to be performed.  CASA amended its petition to include Mr. Moore in August of 2000.

On September 15, 2000, following DNA testing, Mr. Moore was adjudicated the biological and legal father of D.L.B. and was ordered to pay child support.  In November of 2000, the juvenile court entered an order allowing Mr. Moore limited visitation with D.L.B.  DCS requested that CASA dismiss its petition to terminate Mr. Moore's parental rights.  A DCS caseworker acknowledged that DCS had not made reasonable efforts to assist Mr. Moore in obtaining custody of his child prior to learning the results of the DNA test.  DCS, therefore, requested additional time to work with Mr. Moore to determine his fitness to parent D.L.B.  On March 22, 2001, the juvenile court dismissed CASA's amended petition to terminate the parental rights of Mr. Moore.  This dismissal was not on the merits.

---

[1]The juvenile court record concerning D.L.B. is not part of the record in this case.

In the meantime, on January 31, 2001, the Nicklesons filed the present action in the Shelby County Chancery Court seeking to terminate Mr. Moore's parental rights and to adopt D.L.B. At the time the Nicklesons filed this petition, Mr. Moore was paying child support and visiting with D.L.B.

Following a hearing in June of 2001, the chancery court entered an order terminating the parental rights of Mr. Moore on the basis of abandonment as defined by Tennessee Code Annotated section 36-1-102(1)(A)(i). This finding was based solely upon Mr. Moore's conduct in the four-month period preceding the May 2000 petition to terminate his parental rights filed by CASA in juvenile court. The chancery court did not specifically address any of the additional grounds for the termination of parental rights that were asserted by the Nicklesons.

The Court of Appeals affirmed the ruling of the chancery court. Applying Tennessee Code Annotated section 36-1-102(1)(A)(i), the intermediate appellate court held that Mr. Moore's conduct prior to the filing of CASA's juvenile court petition constitutes a basis for termination of his parental rights in the present action. The Court of Appeals also held that Mr. Moore's parental rights should be terminated upon an additional ground of abandonment, defined by Tennessee Code Annotated section 36-1-102(1)(A)(iii). This section specifies that parental rights may be terminated if the father "willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iii) (2001).

We granted permission to appeal.

## II. Analysis

### A. Tennessee Code Annotated Section 36-1-102(1)(A)(i)

Tennessee Code Annotated section 36-1-102(1)(A)(i) provides that for the purposes of terminating parental rights, "abandonment" may be established by showing that:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child[.][2]

---

[2]Effective June 2, 2003, an enactment of Tennessee's General Assembly amended Tennessee Code Annotated, Title 36, Chapter 1, Part 1. See Act of May, 15, 2003, 2003 Tenn. Pub. Acts 231. As part of this enactment, Tennessee

(continued...)

In this case, it is clear that during the four months preceding the Nicklesons' filing of the petition to terminate parental rights, Mr. Moore paid child support and visited with D.L.B. The chancery court and Court of Appeals, however, relied upon Mr. Moore's failure to pay child support or visit with D.L.B. in the four-month period preceding the filing of CASA's May 2000 petition to terminate parental rights.

Construction of statutes and application of law to facts are questions of law, which we review under a purely de novo standard, according no deference to the conclusions of law made by the lower courts. See Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997). In construing statutes, this Court's role is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995); State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993)). Legislative intent is derived from the plain and ordinary meaning of the statutory language unless the statute is ambiguous. See Owens, 908 S.W.2d at 926. If statutory language is ambiguous, then we must look to the entire statutory scheme to determine legislative intent. Id. Component parts of a statute should be construed, if possible, consistently and reasonably. See State v. Alford, 970 S.W.2d 944, 946 (Tenn. 1998).

The lower courts erred in interpreting Tennessee Code Annotated sections 36-1-102(1)(A)(i) and 36-1-102(1)(F). While Tennessee Code Annotated section 36-1-102(1)(A)(i) uses the phrase "*a* proceeding or pleading to terminate parental rights" in this same statutory section, the legislature also uses the phrase "*the* petition for termination of parental rights or adoption." (Emphasis added). Read as a whole, we conclude that Tennessee Code Annotated section 36-1-102(1)(A)(i) requires that the willful failure to visit, support, or make reasonable payments toward the support of the child must have occurred in the four months immediately preceding the filing of the petition currently before the court.

The language in Tennessee Code Annotated section 36-1-102(1)(F) does not compel a contrary result. Tennessee Code Annotated section 36-1-102(1)(F) states that a parent may not repent of abandonment by resuming visitation or support subsequent to the filing of "*any* petition" seeking to terminate parental rights. (Emphasis added). The word "any" has a variety of meanings. See, e.g., Indus. Risk Insurers v. Hartford Steam Boiler Inspection & Ins. Co., 779 A.2d 737, 748

---

[2](...continued)
Code Annotated section 36-1-102(1)(A)(i) was amended as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Id.

(Conn. 2001) (observing that "[t]he word 'any' can be used to denote 'all,' 'every,' 'some' or 'one'"). Because the word "any" in Tennessee Code Annotated section 36-1-102(1)(F) could have different meanings, we conclude that this statutory provision is ambiguous. See LeTellier v. LeTellier, 40 S.W.3d 490, 498 (Tenn. 2001) (stating that "'[a] statute is ambiguous if the statute is capable of conveying more than one meaning'") (quoting Bryant v. HCA Health Servs. of N. Tenn., Inc., 15 S.W.3d 804, 809 (Tenn. 2000)). Therefore, we must look to the entire statutory framework to ascertain the legislature's intent. See Owens, 908 S.W.2d at 926. In order to ascertain the legislature's intent, "'[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning.'" Scott v. Ashland Healthcare Ctr., Inc., 49 S.W.3d 281, 286 (Tenn. 2001) (quoting State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995)).

Read in the context of the statutory scheme that governs the termination of parental rights, we conclude that the word "any" is addressed only to petitions presently under the court's consideration. This interpretation best effectuates legislative intent without unduly impinging upon the fundamental rights of parents. Clearly, the legislature did not intend that parents be able to repent of their abandonment after a petition currently under consideration is filed. However, there is no indication that the legislature intended that conduct occurring prior to dismissal of an earlier petition to terminate parental rights that was brought by one party should be used as a ground for terminating parental rights in a subsequent proceeding initiated by another party. Accordingly, we hold that only a parent's conduct in the four months immediately preceding the filing of a petition then before the court may be used as grounds to terminate parental rights under Tennessee Code Annotated section 36-1-102(1)(A)(i). Since there is no dispute that Mr. Moore paid child support and visited D.L.B. in the four months immediately preceding the petition filed in the chancery court by the Nicklesons, the lower courts erred in terminating Mr. Moore's parental rights based upon Tennessee Code Annotated section 36-1-102(1)(A)(i).

### B. Tennessee Code Annotated Section 36-1-102(1)(A)(iii)

Tennessee Code Annotated section 36-1-102(1)(A)(iii) provides that parental rights may be terminated if the father "willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child." There must be clear and convincing evidence in the record to support the termination of parental rights. See Tenn. Code Ann. § 36-1-113(c)(1) (2001). The record shows that during her pregnancy Mrs. Bady typically stayed with Mr. Moore only a few days at a time. She would then be absent from his home for periods of about a month. Mr. Moore provided money to Mrs. Bady on some of the occasions when she stayed at his home in the four months immediately preceding D.L.B.'s birth. Mr. Moore said that he would not give Mrs. Bady money if she intended to use it to buy crack cocaine. However, if Mrs. Bady indicated that she needed to buy food or clothes, he would give her $10 or $20. Mr. Moore testified that he also encouraged Mrs. Bady to seek prenatal care, but she refused to do so.

The Court of Appeals held that the payments Mr. Moore gave to Mrs. Bady during the four months immediately preceding D.L.B.'s birth were unreasonable. However, the Court of Appeals failed to address whether Mr. Moore's conduct was willful. Under Tennessee Code Annotated section 36-1-102(1)(A)(iii), parental rights may be terminated only if the payments toward the support of the child's mother during the four months immediately preceding the birth of the child were unreasonable *and* the failure to make reasonable payments was willful. In <u>Tennessee Baptist Children's Homes, Inc. v. Swanson</u> (<u>In re Swanson</u>), 2 S.W.3d 180, 188 (Tenn. 1999), this Court held that defining abandonment as the mere non-payment of support was unconstitutional because this language creates an irrebuttable presumption of abandonment, irrespective of intent. <u>Swanson</u> dictates that an element of intent must also be applied to the definition of abandonment in Tennessee Code Annotated section 36-1-102(1)(A)(iii). Therefore, the Court of Appeals erred in terminating Mr. Moore's parental rights based upon Tennessee Code Annotated section 36-1-102(1)(A)(iii) because the court did not address the required element of willfulness.

Furthermore, we hold that the trial court is the proper court to make a determination of willfulness pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iii). Mr. Moore's testimony is critical to the determination of whether his conduct toward Mrs. Bady in the four months immediately preceding D.L.B.'s birth was willful. Moreover, the determination of whether the support Mr. Moore provided to Mrs. Bady was reasonable involves a finding of fact, which the trial court is in the best position to make.

The trial court is required to find only one statutory ground for termination of parental rights. <u>See</u> Tenn. Code Ann. § 36-1-113 (2001). However, given the importance of establishing the permanent placement of a child who is the subject of a termination of parental rights proceeding, the trial court should include in its final order findings of fact and conclusions of law with regard to each ground presented. If the trial court addresses each ground that is raised in a termination proceeding, the child's permanent placement will not be unnecessarily delayed due to a remand for findings on alternate grounds. Unfortunately, the trial court made no findings of fact with regard to Mr. Moore's conduct toward Mrs. Bady in the four months immediately preceding D.L.B.'s birth. Consequently, we remand this case to the trial court to consider abandonment under Tennessee Code Annotated section 36-1-102(1)(A)(iii) and all other grounds for termination of parental rights asserted in the Nicklesons' petition.

### III. Conclusion

We hold that the lower courts erred in determining the applicable four-month period of consideration for abandonment under Tennessee Code Annotated section 36-1-102(1)(A)(i) and that the Court of Appeals erred in determining that Mr. Moore abandoned his child under Tennessee Code Annotated section 36-1-102(1)(A)(iii). Because grounds for terminating the parental rights of Mr. Moore have not been established, we do not reach the best interest of the child analysis. <u>See</u> Tenn. Code Ann. § 36-1-113(c) (2001) (requiring first a "finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been

established" and then a finding that the "termination of the parent's or guardian's rights is in the best interests of the child"). Accordingly, we reverse the Court of Appeals and remand this case to the trial court. We direct the trial court to address each ground for termination of parental rights asserted by the Nicklesons. In order to expedite this case, the trial court's judgment should be entered no later than sixty days from the entry of this judgment. <u>See</u> Tenn. Code Ann. § 36-1-124 (2001) (providing that contested terminations of parental rights and adoptions shall be expedited at trial and on appeal).

Costs of this appeal are taxed to the appellees, David Joe Nickleson and his wife, Denise Nickleson, and their surety, for whom execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE