IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, April 3, 2012

**IN RE:  KYLER R.C.H., et al.**

**Appeal from the Juvenile Court for Cumberland County**
**No. 2011-JV-2054     Hon. Larry M. Warner, Judge**

**No. E2011-02091-COA-R3-PT-FILED-MAY 8, 2012**

In this case for parental termination, the Trial Court found statutory grounds for terminating
the parents' parental rights to their three minor children.  Only the father has appealed, and
we hold that the evidence preponderates in favor of the Trial Court's finding for grounds of
abandonment, as well as termination of parental rights being in the best interest of the
children.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D.
SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Matthew Edwards, Crossville,  Tennessee, for the appellant, Kelly H.

Robert E. Cooper, Jr., Attorney General and Reporter, and Marcie E. Greene, Assistant
Attorney General, Nashville, Tennessee, for the  Tennessee Department of Children's
Services.

**OPINION**

The Department of Children's Services ("DCS"), petitioned for the Termination of
Parental Rights on May 9, 2011, against Sarah M. and Kelly H., regarding three children:
Kyler H., d/o/b 8/14/07, Lillian H., d/o/b 10/14/09, and Casey M., d/o/b 11/11/05. The
Petition states that Sarah ("mother") and Kelly ("father") are the parents of all three children,
and the father was incarcerated in the Morgan County Correctional Complex.

The Petition states that the children were found to be dependent and neglected on October 8, 2010, and were placed in DCS custody on April 17, 2010. Further, that the children were taken into custody because the mother was without housing, transportation, or adequate income, and because Casey had special medical needs which were not being met.

The Petition elaborated that the father had an extensive arrest record for drug charges and vandalism, and had spent 36 days in jail in a three-month period. While DCS was trying to work with the family, both the mother and father were arrested for promotion to manufacture methamphetamine and possession of a prohibited weapon. The Petition states that the parents were leaving the children with the paternal grandparents for several days at a time in an unsuitable home.

The Petition alleged that the mother had abandoned the children by failing to provide a suitable home, despite reasonable efforts by DCS, and that both parents had been incarcerated during the four months prior to the filing of the petition, and had engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the children. Further, that the parents failed to comply with the permanency plan by failing to submit to an A&D assessment, failing to submit to drug screens, failing to submit to a clinical parenting assessment, failing to obtain and maintain housing, etc. The Petition concludes that it is in the children's best interests for the parents' rights to be terminated.

The parents were transported from jail to attend the termination hearing, which was held on August 24, 2011.

Several witnesses testified, including the parents, and at the conclusion of the evidentiary hearing the Trial Court ruled that grounds for termination had been proven by clear and convincing evidence, i.e., abandonment by failure to provide a suitable home, abandonment by incarcerated parents who had shown wanton disregard for the children's welfare, as well as substantial noncompliance with the plans, and that the conditions leading to removal still persisted. In the Final Decree of Guardianship, the Court recited that there was clear and convincing evidence to terminate the parents' rights. The Court found that DCS had made reasonable efforts to assist the parents in visiting the children, establishing a suitable home, complying with their requirements under the permanency plans, and remedying the conditions necessitating foster care. The Court found the children were taken into custody on April 17, 2010, and were then adjudicated to be dependent and neglected on October 8, 2010.

The Court found that for a period of four months following removal, DCS made reasonable efforts to help the mother establish a suitable home, but she made no reasonable efforts, and demonstrated a lack of concern for the children such that it appeared unlikely that

she would be able to provide a suitable home at an early date. Further, the mother failed to attend multiple A&D assessment appointments, failed to attend IOP A&D treatment, and was repeatedly incarcerated. The Court said the mother was incarcerated during the four months prior to the filing of the Petition, and that the mother had abandoned the children pursuant to Tenn. Code Ann. §36-1-113(g)(1) and §36-1-102(1)(A)(ii). Further that the mother had exhibited a wanton disregard for the children's welfare prior to her incarceration, including exposing the children to domestic violence, and a "flurry of criminal activity" causing repeated arrests.

The Court found the father had also been incarcerated during the four months prior to the filing of the Petition, and had exhibited a wanton disregard for the children's welfare prior to his incarceration, as he committed domestic violence in the presence of the children, and engaged in criminal activity resulting in repeated arrests and incarcerations. The Court held that both parents had abandoned the children pursuant to Tenn. Code Ann. §36-1-113(g)(1) and §36-1-102(1)(A)(iv), and that their rights were terminated. Further, the Court found clear and convincing grounds for termination, and that termination was in the children's best interest.

The father has appealed and raised these issues:

1.      Whether the Trial Court erred finding by clear and convincing evidence that termination of the father's parental rights was in the children's best interests?

2.      Whether the Trial Court erred in finding by clear and convincing evidence that grounds for termination of the father's parental rights were established?

Since grounds for termination must be shown before the best interest analysis can be reached, this issue will be first considered. The father asserts the Trial Court erred in finding that there was clear and convincing evidence of grounds for termination, and argues that it was not shown that he could not lead a drug-free life upon release, and that he was only free for less than two months during the time the children were in custody, which was insufficient time for him to comply with the permanency plan.

Abandonment is a ground for termination pursuant to Tenn. Code Ann. §36-1-102(1)(A)(iv). As this Court has explained:

We have previously recognized, parental incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial

harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005). This Court has also stated:

The statutory language governing abandonment due to a parent's wanton disregard for the welfare of a child "reflects the commonsense notion that a parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and recognizes that a "parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child."

*In re: C.A.H.*, 2009 WL 5064953 (Tenn. Ct. App. Dec. 22, 2009).

Thus, when parental incarceration is coupled with "a broader pattern of conduct" prior to incarceration that exhibits a wanton disregard for the welfare of the child, the statutory ground has been met.

This Court recognized in *In re: C.A.H.*, that "[n]umerous cases have held that a parent's previous criminal conduct, coupled with a history of drug abuse, constitutes a wanton disregard for the welfare of the child", and that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id., quoting In re Audrey S.*

*In re Zada M.*, 2011 WL 1351575, 4-5 (Tenn. Ct. App. Apr. 11, 2011).

In this case, an examination of the father's lengthy criminal record demonstrates that he clearly "engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[ren]". From 2005, when the first child was born, and continuing up until the time of his current incarceration, the father's charge history shows that he incurred approximately **40** separate charges, including multiple drug offenses, multiple assault and domestic violence charges, theft charges, criminal trespassing, evading/resisting arrest, multiple charges of driving on a revoked license, multiple violations of probation, etc. These charges were incurred on a regular basis throughout that time period, and resulted in the father serving numerous stints in jail of varying durations. He admitted to drug use during that time period and failed at least one drug test administered by the department. He pled guilty to procuring ingredients to manufacture meth, and exhibited every type of behavior referenced in the above case law, i.e. "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child". *See In re Zada M., supra.* The stated ground for termination was clearly established

by the evidence, and we affirm the Trial Court on this issue.

It is well-settled that only one of the statutory grounds must be proven in order to establish sufficient grounds for termination of parental rights. Tenn. Code Ann. §36–1–113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). The arguments regarding the other grounds are pretermitted, as the ground of abandonment was clearly established.

Finally, the father argues that the Trial Court erred in finding that clear and convincing evidence existed that termination was in the children's best interests. Lengthy testimony was heard by the Trial Court regarding Casey's fragile medical condition and serious health problems, and it was not unreasonable for DCS to put him in a medically-fragile home apart from his two siblings, who were kept together. The evidence demonstrated that Casey required 24-hour care, which was administered by his foster family (who were specially trained) and a private nurse, and that all of his needs were being met in the foster home. The foster mother for Kyler and Lillian testified that she was not trained to provide the care Casey required, and that her home was also not suitable to deal with the equipment he needed and moving him in would require significant remodeling. Further, she cared for Kyler and Lillian and four other adopted children, and would not have the time necessary to care for Casey's medical needs. There was testimony that the siblings were allowed to visit and that this would continue even if the adoptions were granted.

When determining whether termination is in the children's best interests, the court is to consider the statutory factors found in Tenn. Code Ann. §36–1–113(i).

In this case, the father had not shown that he had made such an adjustment of circumstance or conduct such that it would be safe for the children to be in his home, but had completed some courses in jail dealing with "success after release" and drug issues, but he was unable to demonstrate that he could successfully, after his release, maintain sobriety outside of jail. The children had been in custody for a year and a half, and the father had not been able to visit the children, and his supervised visits before his incarceration were unsatisfactory, according to the case worker. He testified that he loved the children, but it was not shown that he had a meaningful relationship with them.

The evidence established that the homes where the children were placed were stable and happy and the children had bonded with their foster families.

Considering the statutory factors, coupled with Casey's medical needs (which the parents neglected), and Kyler and Lillian's attachment to their foster family, the Trial Court did not err in finding that it was in the children's best interests to terminate the father's parental rights.

Finally, the father argues that his mother should have been given custody of the children, as she testified she was willing to care for them. DCS's response was that it had no requirement to place the children with extended family before termination of parental rights. *In re Aiden R.B.*, 2011 WL 2206637 (Tenn. Ct. App. June 7, 2011).

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Kelly H.


_____
HERSCHEL PICKENS FRANKS, P.J.