IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2012

IN RE WILLIAM S. ET AL.

Appeal from the Juvenile Court for Davidson County
No. 20103208       Betty K. Adams Green, Judge

No. M2011-02602-COA-R3-PT - Filed July 20, 2012

Father appeals the termination of his parental rights. The trial court found multiple grounds
for termination of his rights and that termination was in the best interest of the two children.
Father appealed. Because he did not appeal the ground of wanton disregard for the welfare
of the children, we find it unnecessary to discuss the other grounds at length. We do find,
however, that there is clear and convincing evidence supporting a finding that additional
grounds exist. We further find that termination of Father's parental rights is in the best
interest of the children. Consequently, we affirm the trial court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR.
and RICHARD H. DINKINS, JJ., joined.

Clayton Michael Cardwell, Nashville, Tennessee, for the appellant, Kevin Dean S.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General;
and Douglas Earl Dimond and Marcie Eubanks Greene, Assistant Attorneys General; for the
appellee, State of Tennessee, Department of Children's Services.

Susie Piper McGowan, Nunnelly, Tennessee, Guardian Ad Litem.

OPINION

Kevin S. ("Father") and Stacy S. ("Mother") are the parents of William S. and Levi
S. This matter[1] began when the parents were arrested at a Waffle House on July 5, 2010, for

---

[1]William had been removed from the home once before. He was returned to the custody of his
(continued...)

drug possession, possession of drug paraphernalia, two counts of child neglect/endangerment and theft under $500.00. The next day, the Department of Children's Services ("DCS") received a referral concerning the children's exposure to drugs. The children were removed July 8, 2010, and adjudicated dependent and neglected on November 9, 2010. The initial permanency plan was developed in a meeting with the family on August 13, 2010. The plan's goal was reunification and required Father to undergo a parenting assessment with a mental health component, remain drug free, visit the children, obtain stable housing, obtain a stable income and pay child support. The magistrate added the goal of adoption to the plan at the ratification hearing because the parents were not maintaining contact with DCS, not visiting the children and not informing DCS of their whereabouts. He also added an alcohol and drug assessment requirement.

On November 9, 2010, the magistrate found William and Levi to be dependent and neglected. The magistrate specifically wrote in the order that the court went over Father's rights and obligations under the permanency plan and the criteria for termination of parental rights. Father appealed to the juvenile court judge. Soon thereafter, Father was involved in an automobile accident. He was charged with DUI. The next day, November 24, 2010, the guardian ad litem for the children filed a petition to terminate the parents' parental rights. The petition alleged abandonment by failure to visit and failure to pay support, exposure to or failure to protect from abuse or neglect likely to cause bodily harm or death, wanton disregard, and substantial non-compliance with the permanency plan.

Father was incarcerated in January 2011.[2] The permanency plan was revised February 25, 2011. On that date, Father, who had been released from jail, signed and received a copy of the Criteria and Procedures for Termination of Parental Rights. Father's appeal of the magistrate's dependency and neglect finding was heard March 22, 2011, and the juvenile court judge also found the children dependent and neglected due to their parents' long-term use of drugs and alcohol. In April, Father pleaded guilty to two counts of child neglect and endangerment, theft of property of $500 or less, and possession of a Schedule IV drug. He was sentenced to 180 days in jail followed by two years of probation. In May, DCS filed an intervening petition to terminate Father's and Mother's parental rights, alleging abandonment by incarceration/wanton disregard, substantial non-compliance with the permanency plan and persistence of conditions. Mother surrendered her rights. Father went to trial.

---

[1](...continued)
parents July 24, 2009.

[2]This was not the first time Father had served as an involuntary guest of the penal system.

A trial on both petitions was held September 21, 2011. In an order entered on November 2, 2011, the juvenile court judge found clear and convincing evidence of the following grounds for termination of Father's parental rights: abandonment by incarceration/wanton disregard, abandonment by failure to visit, substantial non-compliance with the permanency plan and persistence of conditions. She also found that it was in the children's best interest to terminate Father's parental rights. Father appealed.

Standard of Review

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Consequently, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). The termination of a person's parental rights "has the legal effect of reducing the parent to the role of a complete stranger." *In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *6 (Tenn. Ct. App. Apr. 29, 2005). Pursuant to Tenn. Code Ann. § 36-1-113(l)(1), "[a]n order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian."

Tennessee's termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). A trial court is only required to find one statutory ground in order to terminate parental rights. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's

mind a firm belief or conviction regarding the truth of the facts sought to be established."
*Id.*

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

Analysis

Father argues that the trial court erred in finding that DCS made reasonable efforts to reunify Father and his children. Grounds for termination of parental rights must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1). One of the requirements for termination, with certain exceptions not applicable here,[3] is that DCS make reasonable efforts to reunify the family. Tenn. Code Ann. § 37-1-166(a)(2). DCS has the burden of proving reasonable efforts. As part of its proof, DCS is required to file an affidavit with the court addressing several matters, including the services that "have been provided to assist the family and the child so as to prevent removal or to reunify the family," and the specific reasons, if any, "why services could not have been provided." Tenn. Code Ann. § 37-1-166(c)(3) & (4). A search of the record does not unearth a DCS affidavit of reasonable efforts. While disappointing,[4] the absence of the affidavit is not fatal to DCS's case, as long as DCS provides the court with specific evidence of its reasonable efforts. *In re C. M. C.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326 at *8 (Tenn. Ct. App. Mar. 9, 2004).

---

[3]It appears that one exception to the reasonable efforts requirement may apply, but the record is not fully developed. Tenn. Code Ann. § 37-1-166(g)(4)(C) excuses reasonable efforts "if a court of competent jurisdiction has determined that . . . [t]he parental rights of the parent to a sibling or half-sibling have been terminated involuntarily." Father's sister testified that she had filed a successful petition to terminate Father's parental rights to his two older children by another wife. The testimony does not show that the matter was final since Father's motion for reconsideration was denied only the day before the September 21, 2011 trial. Father indicated that he would appeal that termination and the record before this court has not been supplemented.

[4]These affidavits are very helpful to the courts in reaching independent conclusions as to the sufficiency of the department's efforts. See *In re C. M. C.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, *8 (Tenn. Ct. App. Mar. 9, 2004). Statutory commands such as Tenn. Code Ann. § 37-1-166(c) are ignored at the Department's peril.

Testimony shows that DCS took many actions to try to assist the family beginning after William's first removal from Father.[5] DCS attempted to set up an alcohol and drug assessment; secured funding for an alcohol and drug assessment, a parenting assessment and a mental health assessment; provided therapeutic visitation and supervised visits; provided some parenting classes and parenting education; set up utility payment assistance; and, found housing when Father moved to another state. DCS even replaced two caseworkers at Father's request because he felt that they were being too hard on him.

The trial court also found that Father "did not avail himself of the services offered. He refused to undergo the mental health and parenting assessment and did not stay in contact with DCS. More importantly, by his own admission, he did not participate in the A/D assessment to address his long-standing drug issues." Father's actions hindered DCS's ability to assist. The parent has to make efforts to change the behavior or circumstances that led to removal of the child. DCS cannot, and should not, bear the sole burden of reunification of the family. The road to family reunification is a two-way street. *In re Randall B., Jr.,* No. M2006-00055-COA-R3-PT, 2006 WL 2792158, at *6 (Tenn. Ct. App. Sept. 28, 2006).

Clear and convincing evidence supports the trial court's finding that DCS made reasonable efforts to provide assistance to Father.

Father challenges the trial court's findings of clear and convincing evidence of persistence of conditions and abandonment by failure to visit. Significantly, Father has not challenged the trial court's finding that he had abandoned the children by engaging "in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv). Thus, he has waived that issue. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006). Nevertheless, we will briefly address the issue.

A ground for termination of parental rights is abandonment as defined in Tenn. Code Ann. § 36-1-102. Tenn. Code Ann. § 36-1-113(g)(1). Tenn. Code Ann. § 36-1-102(1)(A) contains several definitions of abandonment, including:

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully

---

[5]*See infra* footnote 1.

failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child
. . . .

The statute referencing actions constituting wanton disregard is not limited by the four-month requirement at the beginning of the section. *In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005). The language of the "wanton disregard" provision does, however, require incarceration "at or near the time of the filing of the termination petition." *Id*. at 865. This requirement is met because Father was jailed in January and April 2011, and the DCS petition was filed in May, 2011. "We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id*. at 867-68. The record contains evidence of several incarcerations, a probation violation, theft, DUI, criminal child neglect and endangerment, and drug abuse. Father's being under the influence of alcohol or drugs resulted in his arrest at the Waffle House, which led to the removal of the children. We agree with the trial court's conclusion that there is clear and convincing evidence that Father engaged in conduct exhibiting a wanton disregard for the children's welfare.

Only one ground for termination of parental rights need be found by clear and convincing evidence before the court can move on to the best interest analysis. *In re C.W.W.*, 37 S.W.3d 467, 475 (Tenn. Ct. App. 2000). Given the clear and convincing evidence of wanton disregard and the fact that Father did not appeal the wanton disregard finding, we see no need in prolonging this portion of the opinion with an analysis of other grounds found by the trial court and appealed by Father. We note, however, that having reviewed the record there is clear and convincing evidence to support the finding that these additional grounds exist.

Once grounds for termination are found, we must examine whether it is in the best interest of the children to sever the parent-child relationship. Tenn. Code Ann. § 36-1-113(i) contains nine well-known, non-exclusive statutory factors for courts to consider when conducting the best interest analysis. Father pled guilty to two counts of felony child neglect of William and Levi. His post-removal cooperation with DCS has been spotty at best and his visitation with the children has been inconsistent. While we could continue with a list of reasons going on several pages, it is sufficient to say that we find that the children's best interest is served by the termination of Father's parental rights.

The decision of the trial court is affirmed. Costs of appeal are assessed against Father, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE