IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 25, 2014 Session

## IN RE ELLA M. I., ET AL.[1]

**Appeal from the Juvenile Court for Maury County**
**No. 82431, 82432      George L. Lovell, Judge**

_____

## No. M2013-01543-COA-R3-PT - Filed April 30, 2014

_____

Mother appeals the termination of her parental rights. We conclude from the record that clear and convincing evidence does not support the trial court's finding of willful abandonment and, accordingly, reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Seth M. Lasater, Columbia, Tennessee, for the appellant, Elisabeth I.

Stacy D. Attkisson, Columbia, Tennessee, for the appellees, Thomas I. and Jacqueline I.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Minor children Ella M.I. and Madeline N.I. were born to appellant Elisabeth P.I. ("Mother") and Thomas A.I., Jr. ("Father"). Mother and Father are divorced. The appellees, Thomas I. and Jacqueline I., are the children's paternal grandparents. The grandparents were

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

1

awarded temporary emergency custody of the children pursuant to a May 28, 2008 order, and the children have resided with them since then. Mother was ordered to pay $100.00 monthly support for the children.[2] By agreed order, Mother was allowed visitation with the children every other Saturday, provided she gave two days' notice.

On December 17, 2010, the paternal grandparents petitioned the court to terminate Mother's and Father's parental rights on the grounds of abandonment by willful failure to support and Mother's willful failure to visit the children. A guardian ad litem was appointed to represent the children. The paternal grandparents and Shelia S. (the children's maternal grandmother) were the only witnesses who testified at the July 18, 2011 termination of parental rights hearing.[3] At the close of evidence, the trial court found: "[Mother] has absolutely done little of anything. Little if anything, number one, to visit with her children or number two, when she did visit, to try to encourage further visitation." The court further found that "there is clear and convincing evidence, as to both [Mother and Father] that they have certainly - - that their actions have not engendered any kind of reasonable response or reasonable understanding in anybody that they want to be parents to these children." The parties agreed that the paternal grandparents' attorney, Stacy Attkisson, would draft the final order reflecting the trial court's ruling.

On May 7, 2013, Mother, acting pro se, moved the court to grant her joint custody of the children with the paternal grandparents and to appoint her a new attorney. In her motion, Mother stated, "the order for termination of rights has not been filed for almost 2 years and I haven't had a fair chance to fight the ruling and I am in a much better position now." Mother also noted that her concerns had "not been appropriately responded to" because each time she contacted her attorney, he told her that he had "spoken with Stacy [Attkisson] and she is almost done with [the final order], yet nothing has happened." Consequently, in late May 2013, the trial court ordered Ms. Attkisson to "submit TPR order pending since 7/18/11 by 5/31/13."

By order entered June 18, 2013, as to both Mother and Father, the trial court found clear and convincing evidence to support the grounds of abandonment by willful failure to visit and abandonment by willful failure to support. The court also found that termination was in the children's best interest and awarded custody, control, and guardianship to the paternal grandparents along with the right to petition to adopt the children.

---

[2] The May 28, 2008 order is not in the record, but the parties stipulated that Mother was ordered to pay $100.00 per month as child support.

[3] We will discuss the testimony in greater detail below as relevant to the issues on appeal.

Mother appealed.  Father did not.

STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996).  Thus, the state may interfere with parental rights only if there is a compelling state interest.  *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).  Pursuant to Tennessee Code Annotated section 36-1-113(l)(1), "[a]n order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian."

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought."  *In re W.B.*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)).  To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest.  Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases.  *Santosky*, 455 U.S. at 769; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence.  Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546.  Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence."  *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted).  Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established."  *Id.*

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d).  *Id.* at 654.  As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d).  *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to

3

terminate parental rights. *Id.*

ANALYSIS

The trial court found clear and convincing evidence that, under Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102(1)(A)(i), Mother had abandoned Ella and Madeline. On appeal, Mother argues that the paternal grandparents did not meet "their burden of proving that [her] failure to visit or pay support was willful" and that "[a]bsent such proof, the trial court simply presumed that [she] had the capacity to visit the children in Dyersburg, Tennessee, away from her home, and to support the children, notwithstanding the fact that she was unemployed and pregnant."

Abandonment, one of the grounds upon which parental rights may be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(1), is defined as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). "The concept of 'willfulness' is at the core of the statutory definition of abandonment." *In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005). A parent's failure to visit or support a child is "willful" when the parent is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864. A parent who fails to support his or her child(ren) because the parent is financially unable to provide support is not willfully failing to provide support. *O'Daniel v. Messier*, 905 S.W.2d 182, 188-89 (Tenn. Ct. App. 1995). A parent's failure to visit or support may be excused by another person's conduct if that conduct "amounts to a significant restraint of or interference with the parent's efforts" to visit or support the child. *In re Audrey S.*, 182 S.W.3d at 864.

*Willful Failure to Support*

It is undisputed that Mother did not pay any child support during the relevant four-month period of August 17, 2010 to December 17, 2010, but the evidence in the record concerning Mother's income or ability to work shows that she was pregnant and unemployed at that time. Upon questioning, the paternal grandmother acknowledged that it would be "probably difficult" for a person to find a job while pregnant, and the grandfather stated that

he did not know anything about Mother's employment history or her ability to pay $100.00 per month.[4]  Ms. S. testified that, for housing, Mother relied on other people's hospitality. In short, the paternal grandparents did not put on any proof to establish that, during the four months prior to the filing of the petition, Mother had the capacity to pay and lacked a justifiable excuse for not paying. *See id*.  Therefore, we cannot agree with the trial court's finding, by clear and convincing evidence, that Mother "had the ability to pay child support and willfully failed to do so."

*Willful Failure to Visit*

Mother lived out of state for part of the relevant four-month period, but moved back home to Maury County in early September 2010.  Over the first few weekends in September 2010, the paternal grandparents and the children moved over 150 miles away from Maury County to Dyersburg.  Ms. S. testified that Mother did not have a car and that there was an arrangement between Ms. S. and the paternal grandparents such that she would supervise visitations between Mother and the children in her home.  Mother visited the children twice in Ms. S.'s home before Ms. S. refused to continue hosting the supervised visits.[5]  Knowing that Ms. S. was caring for Ella during her birthday week in October 2010, Mother requested to visit with Ella but was told, "I'm sorry, but you need to set up your own visits." Interestingly, no one shared the children's new Dyersburg address with Mother.

Although it does not appear that the paternal grandparents or Ms. S. intentionally impeded Mother's efforts to visit Ella and Madeline, the children's relocation three hours away from Mother (who lacked a car and an income) created an obstacle that made it significantly harder for Mother to exercise her visitation.  Besides Ms. S.'s testimony that Mother "seemed to be able to get everywhere else she wanted to go," there is no evidence indicating that Mother had the ability to visit her children during the four months preceding the filing of the petition.  The element of willfulness has been held to be both a statutory and a constitutional requirement. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).  Therefore, we must disagree with the trial court's finding that Mother "had the ability to maintain visitation with the minor children and willfully failed to do so."

We conclude that the trial court erred in finding that Mother abandoned the children

---

[4]The testimony regarding Mother's employment at the time of the July 2011 hearing is irrelevant because, for purposes of Tenn. Code Ann. § 36-1-102(1)(A)(i), the relevant time period for proof of abandonment is the four months preceding the filing of the petition.

[5] Ms. S. did not want to be involved in hosting supervised visitation between Mother and the children because, after the first visit, Mother called the police and made certain allegations against Father.

under Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102(1)(A)(i).

*Delay*

Mother also requests that the trial court's decision be vacated because nearly two years passed between the hearing and the entry of written findings of fact and conclusions of law.  Tennessee Code Annotated section 36-1-113(k) provides that:

> The court shall ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child. The court shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing. If such a case has not been completed within six (6) months from the date the petition was served, the petitioner or respondent shall have grounds to request that the court of appeals grant an order expediting the case at the trial level.

This Court disapproves of unnecessary delays in the final resolution of parental termination proceedings because all parties affected by these proceedings have a right to a prompt, just adjudication of their interests and rights.  We understand Mother's argument, given the flagrant, lamentable, and inexcusable two-year time delay in a case that concerns the minor children's welfare.  After volunteering to draft the final order, Ms. Attkisson displayed indifference to the gravity of this case, to the statute, to the Rules of Professional Conduct,[6] and to the tribunal.  However, the failure to comply with the statutory time frame is not a basis for vacating the trial court's judgment.  *See In re M.R.W.*, No. M2005-02329-COA-R3-PT, 2006 WL 1184010, at *3 (Tenn. Ct. App. May 3, 2006).

CONCLUSION

For the forgoing reasons, we reverse the trial court's order terminating Mother's parental rights and remand for any further proceedings necessary and consistent with this opinion.  Costs of appeal are assessed against the appellees, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6] "In all professional functions a lawyer should be competent, prompt, and diligent."  Tennessee Supreme Court Rule 8, Rules of Professional Conduct, Preamble, subsection 5.