IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 2, 2016

## IN RE GABRIELLA D.

**Appeal from the Circuit Court for Hamilton County**
**No. 13-A-193      L. Marie Williams, Judge**
_____

**No. E2016-00139-COA-R3-PT-FILED-NOVEMBER 30, 2016**
_____

J. STEVEN STAFFORD, P.J.,W.S., dissenting in part.

I fully concur in the majority's affirmance on the ground of severe abuse as to Gabriella D. Because I cannot agree that Foster Parents have shown clear and convincing evidence sufficient to forever sever the parent-child relationship at issue in this case, however, I must respectfully dissent from the majority's decision to reverse the trial court and grant Foster Parents' petition to terminate Mother's parental rights.

A brief summary of the history of this case is helpful. Mother's ignominious history with child protective services began as early as 2005. In 2007, Mother's parental rights to her two oldest children were terminated. Mother soon, however, gave birth to three other children, all of whom she proceeded to abuse and/or neglect until they were removed from her custody in 2012. During this time, the children lived with Foster Parents, who filed a petition to terminate Mother's parental rights. Soon after the filing of the petition, on October 2, 2013,[1] DCS returned the children to Mother's physical custody for a trial home visit. This trial home visit had lasted nearly two years at the time of trial. During the trial home visit, no incidents of abuse or neglect were reported to DCS and Mother failed no drug screens that had been administered to her.

As my learned colleagues correctly point out, whether termination of parental rights is appropriate is a two-part inquiry. Foster Parents must prove: (1) a ground for termination; and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d

_____

[1] According to documents in the record, although the order allowing the children to be returned to Mother's physical custody was entered on October 2, 2013, the children actually began residing with Mother in September 2013.

539, 546 (Tenn. 2002). The purpose of the two-prong test is readily apparent. Because not all parental conduct is irredeemable, "Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." As such, even where a ground for termination has been established, Tennessee courts must also consider whether termination is in the child's best interest. This focus mandates that termination is to serve neither as "a punishment to be meted out nor an award to be rendered to a parent." *In re Kaedince M.*, No. E2015-00763-COA-R3-PT, 2015 WL 6122776, at \*7 (Tenn. Ct. App. Oct. 19, 2015).

Both the ground for termination and the best interest of the child must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. The clear and convincing evidence standard defies precise definition, *Majors v. Smith*, 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989), but has been described as a "high evidentiary burden." *In re Alex B.T.*, No. W2011-00511-COA-R3PT, 2011 WL 5549757, at \*9 (Tenn. Ct. App. Nov. 15, 2011); *see also In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005) (explaining the need for the "heightened" standard of proof as due to the stakes of a termination proceeding being "so profoundly high"); *Gates v. Williams*, No. E2010-01192-COA-R3-CV, 2011 WL 683935, at \*3 (Tenn. Ct. App. Feb. 28, 2011) (describing the clear and convincing standard as a "high burden"). It is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* The burden of establishing the ground for termination and the best interest of the child by this high evidentiary burden is on the party seeking termination and never shifts to the parent. *See In re Dustin T., et al.*, No. E2016-00527-COA-R3-PT, 2016 WL 6803226, at \*18 (Tenn. Ct. App. Nov. 17, 2016) (Stafford, J., dissenting).

I do not dispute the majority's conclusion that Foster Parents established a ground for termination by clear and convincing proof. I cannot agree, however, that the proof that termination was in the children's best interest was clear and convincing. The Tennessee General Assembly has set out a number of factors for the court's use in determining whether termination of parental rights is in a child's best interest. *See* Tenn. Code Ann. § 36-1-113(i). Although we must consider every applicable factor, one factor

may "dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)). The abuse and neglect that Mother inflicted on the children, coupled with Mother's refusal to admit her own culpability and her failure to inform physicians of her drug addiction, certainly weigh in favor of termination in this case.

Still, I believe that the majority Opinion too easily discounts the fact that the children had been living in Mother's home, incident-free, for nearly two years at the time of trial. Instead, the majority Opinion chooses to focus on the past abuse and neglect inflicted on the children and its suggestion that Mother's progress will reverse as soon as she is no longer under intense DCS supervision. As previously discussed, however, the focus of the best interest analysis is not to punish a parent for his or her historically bad behavior; instead, the focus must center on what is best for the children at present and in the future. *See Kaedince*, 2015 WL 6122776, at *7. Here, the trial court found, and the evidence supports, that the children had been living with Mother for the two years prior to trial without suffering any ill effects, that the children are bonded to Mother so that removal from her would cause the children "a loss," and that at least one child has appeared to flourish under her care. Respectfully, after two-years of incident-free parenting in Mother's home, I cannot fathom how much more incident-free parenting time would be required to persuade the majority that Mother's improvements will be lasting.[2]

Furthermore, it is my opinion that where a case involves evidence so equally balanced both in favor of termination and against, the clear and convincing evidence standard demands that we find in favor of continuing the parental relationship. A similar circumstance was at issue in *In re Wesley P.*, No. W2014-02246-COA-R3-PT, 2015 WL 3430090, at *1 (Tenn. Ct. App. May 29, 2015). In *Wesley*, there was little dispute that the parents had committed severe abuse by exposing the child to methamphetamine. *Id.* at *8–*9. The Court of Appeals noted, however, that the trial court "clearly struggled with" the issue of whether termination was in the child's best interest. Ultimately, we held that DCS failed to meet its burden where "the applicable factors do not reveal a clear picture in favor of a finding that termination is in the child's best interest." *Id.* at *11. In reaching this result, the Court noted that the mother's "inability to guarantee that she will remain sober" in the future did not constitute clear and convincing evidence to support a finding that termination was in the child's best interest, even where there was no dispute that the child could not be immediately returned to the mother's home. *Id.* at *12. In that case, we

---

[2] Moreover, it is not Mother's burden to show that her changes will be lasting, but Foster Parent's burden to show that they will not.

instead held that DCS "failed to 'eliminate [] any serious or substantial doubt'" that termination was in the child's best interest, as required to meet the clear and convincing standard of proof. *Id.* at \*13 (citing *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

While the abuse in this case is much more egregious than that at issue in *Wesley*, the record in this case also contains much more proof of Mother's lasting adjustment in circumstances, the stability of her home, and the safety of her children should they be returned to Mother's care. Indeed, in this case, the children **have** been returned to Mother's home and Foster Parents have put on no proof that the children have in anyway suffered as a result. From my review of the record, it appears that by the time of the trial on the termination petition, the children had been residing in Mother's home for a longer period of time than they resided with Foster Parents.[3] As we noted in *Wesley*: "Often, the best interest element of a termination of parental rights case turns on a delicate balance between the substantial need to provide the child stability and the interest of the child in maintaining a relationship with his or her biological family." *In re Wesley P.*, 2015 WL 3430090, at \*13. Here, because the children have been residing in Mother's home without incident for a number of years, it appears that both the interest in stability and the interest in maintaining the parent-child relationship are furthered by denying the termination petition in this case. Accordingly, I cannot agree that Foster Parents have established "a clear picture in favor of a finding that termination is in the child's best interest." *Id.* at \*11. I would therefore hold that Foster Parents failed to show, by clear and convincing evidence, that termination was in Gabriella D.'s best interest.

Based on the foregoing, I must respectfully dissent from the majority Opinion reversing the trial court's denial of Foster Parent's petition to terminate Mother's parental rights to Gabriella D.

_____<br>
J.STEVEN STAFFORD, JUDGE

---

[3] As the majority Opinion states, the children resided with Foster Parents for a period of nineteen months. At the time of trial, the children had been living with Mother for approximately two years.