IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 27, 2013

**IN RE AAYDEN L. B. ET AL.**

**Appeal from the Circuit Court for Dekalb County**
**No. 2012CV15     Amy V. Hollars, Judge**

**No. M2013-00571-COA-R3-PT - Filed July 30, 2013**

The trial court terminated Father's parental rights on several grounds and determined that the termination of his parental rights was in the best interest of the children.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Jermey D. Trapp, Smithville, Tennessee, for the appellant, Brandon B.

Robert E. Cooper, Attorney General and Reporter and Derek C. Jumper, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

Brandon B. ("Father") and Kara F. ("Mother") are the parents of Jayden B., Skyler B., and Aayden B.  On January 27, 2010, the Tennessee Department of Children's Services ("DCS") filed a "Petition to Declare Children Dependent and Neglected with Protective Supervision or in the Alternative for Temporary Legal Custody with Restraining Order."[1] That day, the court issued an order restraining Father from having any contact with the children except for visitation supervised by DCS.  Subsequently, after a March 10, 2010 hearing at which the parents stipulated that the children were dependent and neglected, the court found the children to be dependent and neglected.  The court adopted the DCS petition's proposal for Mother to keep the children subject to a protective supervision plan. In the August 23, 2010 motion for emergency temporary legal custody, DCS maintained that

---

[1]The petition addressed another child, Tyler F., who was not the child of Father and is not a part of this appeal.  The petition did not address Aayden because he had not yet been born.

the children should no longer reside with Mother due to Mother's failed hair follicle test and failure to maintain a stable home. The court placed the children under DCS care and custody, retroactive to August 19, 2010, the date they were removed from the home under DCS's emergency authority.

DCS filed a petition on October 17, 2011, shortly after Aayden's birth, to find Aayden dependent and neglected. The child was in distress at birth, and Mother tested positive for benzodiazepines, opiates, and THC. The court placed the child in DCS custody. DCS filed a petition to terminate Mother's and Father's parental rights on January 27, 2012. Aayden was found dependent and neglected at a hearing on April 11, 2012.[2] Mother surrendered her parental rights to all the children October 12, 2012.

After a hearing, the trial court found that Father had failed to make reasonable efforts to establish a suitable home, willfully failed to visit or support the children, exhibited wanton disregard for the welfare of the children, failed to comply with the permanency plans and that the conditions that required removal of the children persisted. The trial court also found that the termination of Father's parental rights was in the best interest of the children. Father appealed.

STANDARD OF REVIEW

Tennessee's termination statutes identify situations in which the state's interest in a child's welfare justifies interference with a parent's constitutional rights and termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(1)–(2); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require individualized decision making and a higher standard of proof in deciding termination cases. *See Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Swanson*, 2 S.W.3d 180, 188 (Tenn.1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

---

[2]The order was not entered until October 10, 2012.

In light of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. First, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* Next, we must determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

ANALYSIS

Father denies that clear and convincing evidence establishes any of the statutory grounds for termination of his parental rights.

Abandonment by Wanton Disregard

A parent's parental rights may be extinguished due to abandonment. Tenn. Code Ann. § 36-1-113(g)(1). One of the definitions of "abandonment" is found in Tenn. Code Ann. § 36-1-102(1)(A)(iv):

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or *the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and* either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or *the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child*;

(Emphasis added). The relevant incarceration period is the four months immediately preceding the filing of the termination petition on January 27, 2012. Sherry Tubb testified that Father was in the Rutherford County Jail from October 2 to October 11, 2011, and in the DeKalb County Jail from November 28 to December 2, 2011 and from January 13 to January 14, 2012.

Father's incarceration "allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). In doing so, it has been determined that "probation violations, repeated incarceration, criminal

behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68. The record contains substantial, unrebutted proof of such activities on Father's part. We find that the determination of the trial court that this ground was established is supported by clear and convincing evidence as to all three children.

## Persistence of Conditions

Another ground for removal was "persistence of conditions," which requires that:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3). By the time of the hearing, each of the children had been removed for at least a year.

Father contends that he is capable of remedying the conditions and that the state did not prove its case as to this ground. He also argues that he did not have time to remedy the conditions as to Aayden because the child was removed at birth in October 2011 and the termination petition was filed January 27, 2012.[3]

_____

[3]The state's trial counsel said that DCS was not trying to apply this ground to Aayden.

-4-

The trial court found that the conditions that led to the children's removal were incarceration and drug abuse. At the time of the hearing, Father was incarcerated for a violation of probation. He had no job. Since the oldest child was born, Father has had a series of repeated incarcerations, some for probation violations. At the time of trial he had a pending drug-related charge. There has been no showing that the conditions which led to removal have changed, only vague promises not supported by actions. On the contrary, the evidence indicates that nothing has changed. In addition, the trial court found, and the record supports, that Father has not cooperated with DCS's reasonable efforts and that his demeanor was "that of someone who accepts no responsibility. . . ." Based on the testimony, the children have no meaningful relationship with Father and continuation of the parent-child legal relationship greatly diminishes the children's chances of early integration into a safe, stable and permanent home. We conclude that this ground for termination of parental rights was proved by clear and convincing evidence as to Jayden and Skyler.

Substantial Noncompliance with the Permanency Plans

Five permanency plans were made exhibits. They are referred to by date: September 7, 2010 (Jayden and Skyler); February 24, 2011 (Jayden and Skyler); October 19, 2011 (Jayden and Skyler); November 2, 2011 (Aayden); and, April 12, 2012 (Jayden, Skyler and Aayden). Only the first plan entered as an exhibit is signed by the judge. The transcript, however, indicates that Father's attorney agreed to their authenticity.

Father's attorney maintains that "the trial court did not make a finding that the permanency plan requirements were reasonable and related to remedying the conditions that necessitate foster care placement." The Attorney General seems to agree, but notes that the appellate court can review the issue de novo, citing *In re Valentine*, 79 S.W.3d at 547. A reading of the trial court's order, specifically finding number 36, reveals that the court found, "[t]he requirements of the permanency plans are all reasonably related to remedying the conditions that necessitate foster care." This is a non-issue.

Father also complains that there is insufficient proof that he was in substantial non-compliance. The permanency plans had many requirements in common. They all required legal behavior, submission to random urine and hair follicle drug screens, maintenance of a suitable home and employment, cooperation with DCS, and compliance with recommendations of alcohol and drug programs. Parenting classes were also required by the three 2011 plans. The record shows that Father did not cooperate with DCS; he continued to have problems complying with criminal laws; he could not hold a job; he avoided or declined drug tests; and he did not complete parenting classes or alcohol and drug treatment. Clear and convincing evidence supports the trial court's finding that Father failed to substantially comply with the permanency plans.

Reasonable Efforts

Father also claims that DCS did not exert reasonable efforts to assist him in regaining his children. One of the requirements for termination, with certain exceptions not applicable here, is that DCS make reasonable efforts to reunify the family. Tenn. Code Ann. § 37-1-166(a)(2). DCS has the burden of proving reasonable efforts. As part of its proof, DCS is required to file an affidavit with the court addressing several matters, including the services that "have been provided to assist the family and the child so as to prevent removal or to reunify the family," and the specific reasons, if any, "why services could not have been provided." Tenn. Code Ann. § 37-1-166(c)(3) & (4).

DCS filed an exhaustive affidavit of reasonable efforts. The trial court found that DCS made reasonable efforts to assist Father in visiting the children, establishing a suitable home, complying with the requirements of the permanency plans, and remedying the conditions that necessitated foster care. Reasonable efforts cannot be successful unless the parent wants to do the things necessary to regain his children. Father had to make an effort to change his behavior and his circumstances. He did not. As the trial court, based on clear and convincing proof, stated:

> Unfortunately, here we had a parent who in his own words was being stubborn, who did not see that this was his problem and who specifically stated to the Department that the mother just needed to work her plan, because it really wasn't his problem. [Father] was not motivated enough to take affirmative action to get to the Department the information needed to assist him. He failed to provide current contact information. He refused drug screens at times. He did not regularly attend the scheduled visitations with the children. [Father's] choices interfered with his ability to integrate into the children's lives.

Clear and convincing proof was presented that DCS made reasonable efforts.

A trial court is only required to find one statutory ground in order to terminate parental rights. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). In light of the above findings regarding wanton disregard, persistence of conditions and failure to substantially comply with the parenting plans, we see no need to discuss whether Father abandoned the children by failure to visit or support them.

Best Interest

The trial court found that it was in the children's best interest to terminate Father's parental rights. Father argues that there is insufficient proof that termination of his parental rights is in the best interest of the children. He also maintains that the court did not analyze the best interest factors established in Tenn. Code Ann. § 36-1-113(i).

Contrary to Father's assertion, although the trial court did not mention Tenn. Code Ann. § 36-1-113(i) specifically, the court's findings correspond with the factors mentioned in the statute:

(1) Whether the parent or guardian has made such an adjustment of circumstances, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian.

Finding: "[Father] has not made an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent."

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible.

Finding: "[Father] has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible."

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child.

Finding: "[Father] has not maintained regular visitation or other contact with the children. He has only visited the children one time in 2012."

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child.

Finding: "A meaningful relationship has otherwise been established between the children and [Father]. The Court accepts [Father's] testimony that he loves his children, but that love has to be demonstrated through actions."

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition.

Finding: "A change of caretakers and physical environment is likely to have a negative effect on the child's emotional condition."

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household.

The court made no finding on this factor.

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner.

Findings: "There is criminal activity in [Father's] homes resulting in his incarceration."
　　　"[Father's] use of alcohol or controlled substances renders him consistently unable to care for the children on [sic] a safe and stable manner."

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child.

Finding: [Father's] emotional status would be detrimental to the children and/or prevent [him] from effectively providing safe and stable care and supervision for the children.

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Finding: [Father] has not paid child support consistently with the child support guidelines promulgated by the department pursuant to Tenn. Code Ann. § 36-5-101.

In addition, the court made the following relevant findings:

> [Father] has not paid a reasonable portion of the children's substitute physical care and maintenance when financially able to do so. He has not provided food, clothing and other items the children need on a regular basis.

> [Father] has shown little or no genuine interest in the welfare of the children.

> [Father] continues to make lifestyle choices that prevent him from being able to parent the children or to provide a home for the children.

> The children are placed in a foster home that wishes to adopt the children.

> The children have established a strong bond with the foster parents.

> The children need to be released from the stigma of being foster children.

While the trial court's findings as to best interest could have been more detailed, we have reviewed the record and find that there is clear and convincing evidence to find that it is in the children's best interest to terminate Father's parental rights.

The judgment of the trial court is affirmed. Costs of appeal are assessed against Father.

_____
ANDY D. BENNETT, JUDGE